UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RUNNIE MYLES,

                        Plaintiff,

                                                    **ORDER**
            -against-                               CV 17-6424 (JMA) (ARL)

JAY JACOBS individually and in his official capacity
as Chairman of the Nassau County Democratic
Committee, NASSAU COUNTY BOARD OF
ELECTIONS, DAVE GUGERTY in his official capacity
as Democratic Commissioner of the Nassau County Board
of Elections, JOHN DOE AND JANE DOE # 1-10 and
THE COUNTY OF NASSAU,

                        Defendants.
------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

        Before the Court are the motions of the defendants, the County of Nassau, the Nassau

County Board of Elections (the "BOE") and Dave Gugerty ("Gugerty") (collectively, the

"County defendants"), and Jay Jacobs ("Jacobs") to dismiss the complaint pursuant to Federal

Rules of Civil Procedure 12(b)(2), (5) and (6).   For the reasons set forth below, the motions are

granted.[1]

                            **BACKGROUND**

        A.      **Factual Averments**

        The following facts are drawn from the complaint and are accepted as true for purposes

of the motions to dismiss for failure to state a claim.   *Samuels v. Air Transp. Local 504*, 992

F.2d 12, 15 (2d Cir. 1993).   In consideration of the Rule 12(b)(2) and (5) motions to dismiss for

---

[1] Between June 6, 2019 and June 24, 2019, the parties filed Notices, Consents and References of a Dispositive
Motion to a Magistrate Judge.   On June 25, 2019, District Judge Azrack so ordered the Consents directing the
undersigned to enter a final order as to the instant motions.

insufficient service of process, the Court has looked to matters outside the complaint to determine whether it has jurisdiction. *See George v. Prof'l Disposables Int'l, Inc*., 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016); *Carney v. Horion Investments Ltd.,* 107 F. Supp. 3d 216, 222 (D. Conn. 2015).

The plaintiff, Runnie Myles ("Myles"), commenced this action on November 3, 2017, alleging that he was denied an opportunity to participate as an African American candidate in the political process in violation of Section 2 of the Voting Right Act, 42 U.S.C. §1973, the First, Thirteenth, Fourteenth and Fifteenth Amendments to the Constitution of the United States and Article I, Sections 6, 8, 9 & 11 of the New York State Constitution. ECF No. 1. According to the complaint, in February 2017, the Long Beach Democratic Committee (the "LBDC") began to search for candidates for the Long Beach City Council ("City Council"). Compl. ¶13. The candidate selection process was vetted and overseen by the Executive Committee of the LBDC. *Id.* Of foremost concern to the LBDC was to find candidates who would not support large scale luxury development in Long Beach (referred to as the "Comprehensive Plan" and "iStar") because the LBDC believed that such developments would disproportionally impact the minority residents living in the North Park area of Long Beach. *Id.* ¶¶ 14-5. At the end of the selection process, the LDBC chose Myles to run for City Council along with non-parties, Barbara Bernidino ("Bernidino") and Joe Miccio ("Miccio"), because they all pledged not to support large scale development. *Id.* ¶ 16.

Sometime in April 2017, Jacobs, the Chairman of the Nassau County Democratic Committee ("NCDC"), learned that the LBDC intended to nominate Myles, Bernidino and Miccio. *Id.* ¶ 17. According to Myles, Jacobs, was concerned that if Myles, Bernidino and Miccio were elected to the LBDC that they would constitute a majority of the City Council and

successfully block the Comprehensive Plan and iStar. *Id.* ¶ 18. Myles alleges that Jacobs supported the Comprehensive Plan and iStar because Harris Beach, PLLC ("Harris Beach"), the attorneys representing the NCDC, were brokering the deal for the Comprehensive Plan and iStar and stood to receive large legal fees. *Id.* ¶ 19. For this reason, Jacobs and Tom Garry ("Garry"), a partner at Harris Beach, met with the LBDC and asked the committee to nominate a different slate of candidates - candidates that supported the Comprehensive Plan and iStar. *Id.* ¶ 21. At the meeting, Jacobs and Garry are alleged to have forbidden the LBDC from holding a primary and threatened to outspend them if they did. *Id.* ¶ 22.

Despite the threats, the LBDC rejected Jacobs' proposed list of candidates and officially nominated Myles, Bernidino and Miccio, at the Nassau County Nominating Convention on May 25, 2017. *Id.* ¶¶ 23-4. The following week, Jacobs forced Joe Brand, Chairman of the LBDC, to resign and allegedly coerced and bribed "Long Beach Democrats" to support his candidates by offering them committee positions and patronage jobs. *Id.* ¶ 25. As a result, Myles, Bernidino and Miccio never appeared on the Democratic Nominating Petition for the Long Beach City Council. *Id.* ¶ 26. Instead, Jacobs caused an official Nassau County Democrat Designating Petition to be created, which listed Chiumu Diamond, Scott Mandel and John Bendo as the nominees, all of who supported the Comprehensive Plan and iStar. *Id.*

Myles notes in his complaint that he had a right to appear on the official nominating petition but was unaware of his right because he is not an attorney. *Id.* ¶ 27. Accordingly, Myles, Bernidino and Miccio created their own petition and collected signatures to force Long Beach to conduct a primary. *Id.* Shortly thereafter, Gugerty allegedly ordered employees of the BOE to go to the homes of people who had signed Myles' petition and "coerce" them to admit that their signatures were forged. *Id.* ¶ 28. Those same people, mostly elderly and

minority people, were then subpoenaed by Harris Beach to appear at an Order to Show Cause hearing brought by Diamond, Bendel, Bendo and Darlene Tagney (the "Objectors") seeking to invalidate Myles' petition. *Id.* ¶¶ 29-30. John Ciampoli represented Myles in the state action and, based on his advice, Myles withdrew his petition and forfeited his right to appeal. *Id.* ¶¶ 31-2. However, Myles now alleges that his attorney intentionally "threw the case" by convincing him that he would be indicted for fraud unless he withdrew his petition. *Id.* ¶ 32.

### B. Procedural History

As previously indicated, Myles filed the complaint in this action on November 3, 2017. Three days later, counsel for the plaintiff was advised by the Clerk's Office that it could not assign the case without a proper civil cover sheet. It appears from the docket that Myles had failed to file page 2 of the civil cover sheet containing the NY-E Division of Business Rule 50.1(d)(2). In response, on November 8, 2017, plaintiff's counsel filed a second civil cover sheet but, shortly thereafter, Myles' summons was also rejected as it did not match the caption of the complaint and contained both an incorrect case number and date. Myles took no action for three months. Then, in February 2018, Myles filed a third civil cover sheet. ECF No. 5. Three weeks later, Myles' counsel filed three affidavits of service. ECF No. 6.

The first affidavit of service avers that the defendants BOE and Gugerty were served with the summons and complaint on February 27, 2018, by service on Essma Benkhoukha. *Id.* The affidavit does not indicate who Ms. Benkhoukha is or where she was served. *Id.* It simply states that the BOE and Gugerty were served in accordance with the Civil Practice Law and Rules ("CPLR") § 311(4). *Id.* The second affidavit of service avers that on February 27, 2018, and February 28, 2018, Blaire Fellows, counsel for Myles, attempted to serve Jacobs by personally delivering a copy of the summons and complaint to him at the NCDC located at 500

Old Country Road, #103 Garden City, New York 11530. *Id.* Counsel further attests that on March 3, 2018, she attempted to serve Jacobs at his last known residence located at 1362 Ridge Road, Laurel Hollow, New York 11791 pursuant to CPLR § 312-a by enclosing a copy of the papers in a postpaid, sealed envelope. *Id.* The third affidavit avers that on February 28, 2018, counsel served the County of Nassau by delivering a copy of the summons and complaint to Judith Merkel. *Id.* Once again, the affidavit does not indicate who Ms. Merkel is or where she was served. *Id*

By early April, none of the defendants had filed answers. Accordingly, on April 3, 2018, Myles filed a Request for the Entry of a Certificate of Default against all of the defendants with the exception of Gugerty. ECF No. 8. Nothing in the record suggest why Myles chose not to pursue the default judgment against Gugerty. Then, on April 11, 2018, counsel for Jacobs notified District Judge Feuerstein, who had been assigned to this matter, that Jacobs had not been properly served. ECF No. 9. Counsel noted in his letter that even if service was deemed proper, the summons and complaint had been filed outside of the 90-day statutory window. *Id.*

The following week, counsel for the County defendants filed a notice of appearance and also sought to dismiss the action pursuant to Fed. R. Civ. P. 4(m) as the summonses had been served 26 days after the 90-day time period. ECF Nos. 10-13. By order dated April 16, 2018, Judge Feuerstein denied the County defendants' motion as procedurally defective. The County defendants were advised that to the extent they sought to challenge the propriety of service of the summons and complaint, a formal motion in compliance with Fed. R. Civ. P. 7(b), Local Civil Rule 7.1, as well as this Court's Individual Rules of Practice was required. However, around the same time, the plaintiff's request for the entry of a certificate of default was denied.

On April 26, 2018, Myles then filed a motion, which he characterized as a "Fully Briefed

Motion for Summary Judgment." ECF No. 15. The following day, the Court denied that motion. The Court noted that although the motion was characterized as one for "summary judgment," Myles was seeking entry of a default judgment against the defendants in accordance with Fed. R. Civ. P. 55. The Court indicated that the motion was procedurally defective in that Myles had failed to first obtain a certificate of default from the Clerk of the Court pursuant to Fed. R. Civ. P. 55(a). Finally, the Court noted that the Clerk of the Court had already denied Myles' request for a certificate of default in light of the fact that the attorneys had appeared on behalf of defendants and had filed motions with respect to the complaint. *Id.* Nonetheless, upon receipt of the Court's order, Myles filed a "Motion to Set Aside Judgment." ECF Nos. 17.

In early May, the case was reassigned to District Judge Azrack. Following the reassignment, Judge Azrack entered a scheduling order, noting that the defendants had not been properly served. Judge Azrack directed Myles to re-serve all of the defendants in accordance with the requirements of Federal Rule of Civil Procedure 4 and to file proof of service by July 9, 2018. Her order made clear that Myles' failure to do so could result in the dismissal of the entire action.

Despite giving the plaintiff a month to re-serve the defendants and file proofs of service, Myles waited until July 9, to file three affidavits of service. The first affidavit filed by Myles' counsel indicates that after she received a revised summons, she attempted to serve Jacobs by leaving a copy with an individual at the Democratic Headquarters located at 500 Old Country Rd., Suite 103, Garden City, New York 11530. ECF No. 28. In the second affidavit, counsel avers that she attempted to serve the BOE by leaving a copy with Judith Merkel, who she says was designated by law to accept service for the County of Nassau. ECF No. 29. It should be noted that counsel's description of the document on the docket sheet suggests that the second

6

affidavit of service was filed to reflect service on the County of Nassau, not the BOE. *Id.* Indeed, given the fact that counsel had previously served Merkel with the papers for the County of Nassau, it is likely that the second affidavit contains yet another typographical error. In the third affidavit, counsel once again addresses service on the BOE, this time stating that she attempted to serve the BOE by leaving a copy with Essma Benkhoukha, who she avers was designated by law to accept service for the BOE. ECF No. 30.

Three weeks later, counsel for the County defendants filed a premotion conference letter seeking to dismiss the complaint against the BOE and the County of Nassau for failure to state a claim. ECF No. 31. In that letter, defense counsel also advised Judge Azrack that Gugerty had never been served. *Id.* Around the same time, Myles filed a request for a certificate of default as against Jacobs. ECF No. 32. That request was denied. Then, by letter dated August 24, 2018. Jacobs requested that the case be dismissed as against him since he too had not been properly served. ECF No. 36. On September 13, 2018, Judge Azrack held a premotion conference and established a briefing schedule for the motions now pending before the Court.

## DISCUSSION

### A. Insufficient Service

The Court begins its analysis by addressing the parties' arguments concerning the adequacy of service on Gugerty and Jacobs. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'springs from the nature and limits of the judicial power of the United States' and 'is inflexible and without exception'"). "[W]hen a defendant

moves to dismiss under rule 12(b)(5), the plaintiff bears the burden of proving adequate service."

*Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298-99 (2d Cir. 2005); *see also Schwasnick v. Fields*,

2010 WL 26799351 (E.D.N.Y. June 30, 2010).

## 1.      Service on Gugerty.

The County defendants contend that despite being given multiple chances to serve

Gugerty over the course of nearly a year, Gugerty was not personally served pursuant to Federal

Rule of Civil Procedure 4.   Service of process upon an individual within a judicial district of the

United States is governed by Rule 4(e) which states that service may be made by either:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
> > (A) delivering a copy of the summons and of the complaint to the individual personally;
> >
> > (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> >
> > (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).   New York state law provides that personal service on an individual may be

made by four methods: (1) delivering the summons to the defendant; (2) delivering the summons

to a person of suitable age and discretion at the place of business, home, or "usual place of

abode" of the defendant and mailing the summons to the defendant's last known residence or

place of business, which service must be followed within 20 days by the filing of an affidavit of

service identifying the person, date, place and time of service; (3) delivering the summons to the

defendant's agent for service of process; and (4) where service by the first two methods cannot be

made with "due diligence," affixing the summons to the door of the defendant's actual place of

business, home, or "usual place of abode," and mailing the summons to the defendant's last known residence or place of business.   N.Y. CPLR § 308 (1)-(4).   According to the most recent affidavits filed by Myles, Myles first attempted to serve Gugerty in March 2018 by service of the summons and complaint on Essma Benkhoukha.   ECF No. 6 and 30.   In June, Judge Azrack determined that service to be improper and directed Myles to reserve all of the defendants and file proof of service by July 9, 2018.   Despite her warning that failure to do so could result in the dismissal of the entire action, Myles has never filed an affidavit of service for Gugerty.

On July 30, 2018, the County defendants filed a premotion conference letter, in which they advised Judge Azrack that Gugerty had not been served.   ECF No. 31.   In response, counsel for Myles blithely reported that although she had failed to file an affidavit of service for Gugerty this was a "mere omission" and that he had been served at the BOE through "substituted service."   ECF No. 35.   Indeed, four months after the deadline set by Judge Azrack to cure the service defects, Plaintiff's counsel has now included the following statements in her affidavit to support her claim that service was proper:

> I, BLAIRE FELLOWS, declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746:
>
> *     *     *
>
> 7.   At the Board of Elections, I served Essma Benkhoukha with a Summons and Complaint. I asked to speak with Defendant Gugerty, but I was informed he was not there. I left a copy of the Summons and Complaint with Esmma Benkhoukha for Dave Gugerty.
>
> *     *     *
>
> 9.   At the same time, I mailed a copy of the Summons and Complaint to Dave Gugerty at his place of business at the Nassau County Board of Elections.
>
> 10.   At the time the Summons was issued, I could not secure a process server to effectuate service on time, so I was forced to do it myself.

ECF No. 44-6.   Despite the above averment, plaintiff's counsel has failed to meet the requirements for proof of service.   Several critical details including the date and time she served Gugerty as well as the address where such service was made are not provided.   Such details go to the heart of service and their omission are not mere technical defects.   Counsel makes no attempt to explain the failure to comply with Judge Azrack's order, which required her to remedy the defects of service by July 9, or risk dismissal of this matter.   Given the history of filing errors in this case, the remaining irregularities concerning service on Gugerty and in light of Gugerty's assertion that he was never served, Myles has not come forward with enough evidence to satisfy his burden of establishing that service was proper.

### 2.        Service on Jacobs

Similarly, Jacobs argues that he has not been personally served.   According to Jacobs, Myles did not deliver the summons and complaint to a person of suitable age and discretion at his actual place of business or last known residence.   Indeed, the affidavit of service does not allege that delivery of the summons was made on any individual of sufficient maturity who would be reasonably likely to convey the summons to the defendant.   Rather, the affidavit simply states:

> I served a copy of this Summons and Complaint on Jay Jacobs by leaving a copy *with an individual at the Democratic Headquarters* located at 500 Old Country Rd., Suite 103, Garden City, New York 11530 which is Jay Jacobs' actual place of business pursuant to CPLR 308(b).
>
> My fees are $ 450.00 for travel and $ 450.00 for services, for a total of $900.00.

ECF No. 28 (emphasis added).   In addition, according to Jacobs, he was not served at his last known address or actual place of business.   Specifically, Jacobs asserts that he does not "work" at the Democratic headquarters – he is merely a volunteer.   To this

end, plaintiff's counsel has failed to provide any facts in support of her claim that the Democratic headquarters, where Jacobs only volunteers, qualifies as the defendant's place of business. *See Wolongevicz v. Town of Manlius*, 2018 WL 3769857 *7 (N.D.N.Y. Aug 8, 2018) (finding plaintiff failed to sustain burden that the Fire Department where defendant volunteered was his actual place of business). Thus, the affidavit of service is procedurally defective. *Id.*

Equally troubling, Ms. Fellows now admits that she did not even attempt to leave the papers with an agent of the NCDC. *See* Fellows Decl. ¶ 3. Rather, it appears that she ran into a gentleman who she recognized to be an employee of the BOE who happened to be at Democratic headquarters. *Id.* She asked him if he knew who could accept service for Jacobs. *Id.* Although there is nothing in the papers to suggest that he had the knowledge or authority to provide the information, Fellows avers that the BOE employee allegedly pointed to an unidentified blond man in his mid-thirties who said he would give the papers to Jacobs. Again, there is no indication in the papers that the "blond man" was authorized to accept service. Yet, plaintiff's counsel's continues to insist that service was proper despite the fact that this is far from what the Federal Rules require.

Moreover, while this court recognizes that it has discretion to extend the time to serve even where good cause is not shown, it is not required to do so. *See DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). In light of the fact that plaintiff has already been provided a discretionary extension of the time to effect proper service and was given a dismissal warning if she did not comply, this court concludes that another discretionary extension of the time to serve is unwarranted. This

determination is particularly justified where, as here, counsel has demonstrated what can best be described as a cavalier disregard for the statutory requirements of proper service.   Accordingly, the Court finds that the complaint is ripe for dismissal as against both Gugerty and Jacobs based on improper service.

**B.      Merits of the Complaint**

Given the above determination, the Court need only address the merits of the claims asserted against the BOE and the County of Nassau.   Nonetheless, it warrants mention that the Court's merits determination would also have been applicable to the individual defendants and as such provides yet another basis for denying an extension of the time for service.

**1.      Rule 12(b)(6) Standards**

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient to raise a right to relief above the speculative level. *See Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 162 (E.D.N.Y. 2010), *aff'd,* 446 F. App'x 360 (2d Cir. 2011) (citing *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir.2010)).   The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in which the court set forth a two-pronged approach to be utilized in analyzing a motion to dismiss.   District courts are to first identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.   *Id.* at 679.   Though legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.   *Id.*   Second, if a complaint contains well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.*   " claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a [d]efendant has acted unlawfully. *Id*. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

## 2.     Analysis

In the complaint, Myles broadly asserts that his rights protected by the First, Thirteenth, Fourteenth and Fifteenth Amendments to the Constitution of the United States and Article I, Sections 6, 8, 9 & 11 of the New York State Constitution have been violated. The crux of his complaint is that the defendants engaged in a conspiracy to suppress an African American candidate from participating in the political process. He makes this argument notwithstanding that fact that he attempted to run on a slate with two non-minority candidates and asserts, in support of his claims, that all three candidates suffered the same outcome and were removed from the ballot because they had pledged to block the Comprehensive Plan and iStar. Nonetheless, for the sake of completeness, the Court will address each of the plaintiff's claims.

### a.     Due Process

In his first and fourth causes of action, Myles asserts that the defendants' actions denied him due process. In the complaint, Myles clearly pleads a substantive due process claim. Specifically, Myles alleges that the "Defendant Employees, acting though the Defendants, Dave Gugerty and Jay Jacobs, had actual and/or de facto policies, practices, customs and/or usages by using Defendant Board of Elections and Defendant Employees to do the legal work for private entities such as Harris Beach PLLC., for political ends to wit suppressing African American minority candidates from participating in the political process." Compl. ¶ 36. Myles goes on to say that "[t]he privilege of self-governance includes, without limitation, the privilege of enjoying a meaningful opportunity to be elected. This privilege, [he says], is protected by the

13

substantive due process clause of the Fourteenth Amendment." *Id*. ¶ 37. In his opposition papers, Myles includes a procedural due process argument. Pl's Mem. at 10. Namely, Myles asserts that he was denied process because the BOE "influenced" the state court case to such an extent that he was unable to defend himself in that action. *Id*. Regardless of whether Myles intended to assert a substantive or a procedural due process claim, the due process allegations lack merit.

"Substantive due process protects against government action that is arbitrary, conscience shocking, or oppressive in a constitutional sense, . . .." *Reyes v. Cty. of Suffolk*, 995 F. Supp. 2d 215, 230 (E.D.N.Y. 2014) (quoting *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir.1995). "[S]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority.'" *Id*. (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). "A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard." *Id*. (citing *B.D. v. DeBuono*, 130 F.Supp.2d 401, 432–33 (S.D.N.Y.2000)).

To prevail on either a substantive or a procedural due process claim, a plaintiff must show that he or she possessed a protected liberty or property interest. *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir. 1998) ("[T]he threshold inquiry in a substantive due process analysis is whether the property interest claimed rises to the level of a property interest cognizable under the substantive Due Process Clause."); *Velez v. Levy*, 401 F.3d 75, 85 (2d Cir. 2005)("only where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise); *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001)(to prevail on a Fourteenth Amendment procedural due process claim, a plaintiff must show that he or she "possessed a

protected liberty or property interest, and that he [or she] was deprived of that interest without due process")).  Stated another way, to state a substantive due process claim, a claimant must establish that he or she had a valid "property interest" or a "fundamental right" in a benefit that was entitled to constitutional protection at the time he or she was deprived of that benefit. *See Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 17 (2d Cir. 1999).  To establish a procedural due process claim, a plaintiff must establish that he or she was deprived of that interest without due process of law. *Id.* (citing *Kassim v. City of Schenectady,* 255 F.Supp.2d 32, 37 (N.D.N.Y.2003)).  Both Myles substantive and procedural due process claims must be dismissed because he did not have an interest in being a candidate for City Council. *See Wilson v. Birnberg,* 667 F.3d 591, 597 (5th Cir. 2012) (citing *Snowden v. Hughes,* 321 U.S. 1, 7, 64 S. Ct. 397, 88 L. Ed. 497 (1944) ("unlawful denial . . . of a right to state political office is not a denial of a right of property or liberty secured by the due process clause"); *see also McMillan v. New York State Bd. of Election*s, No. 10-CV-2502 JG VVP, 2010 WL 4065434, at *8 (E.D.N.Y. Oct. 15, 2010), *aff'd,* 449 F. App'x 79 (2d Cir. 2011); *Velez v. Levy,* 401 F.3d 75, 86–87 (2d Cir. 2005)).  Indeed, public office does not constitute property within the meaning of the Due Process Clause.[2]  Accordingly, Myles cannot succeed on his due process claim to the extent the injury alleged is that his opportunity to run for office was thwarted.

Moreover, to the extent his due process claims are based on the BOE's approval of the nominating petition, Myles claims also fail.  Myles acknowledges in the complaint that he could have asked to appear on the official nominating petition but he chose instead to create his own petition and to collect signatures to force Long Beach to conduct a primary. *See* Compl. ¶ 27.  To this end, Myles received "post-deprivation

---

[2] Myles attempts to distinguish the cases by arguing that he was denied the ability to be considered for public office, not to hold public office.  Myles change in semantics does not add value to his argument.

process." In fact, although Myles did not commence the state court proceeding, Myles was given an opportunity to argue that his petition was valid but chose to withdraw on the advice of his attorney during that process. *Id.* ¶¶ 30-32. For these reasons, Myles due process claims must fail.[3]

### b. Equal Protection and the First Amendment

In the first and fourth cause of action, Myles also includes broad claims based on equal protection and free speech under Article 1, §§ 8, 9 and 11 of the New York State Constitution. To the extent, Myles seeks to maintain a private right of action under the New York State Constitution, his claims must be dismissed. Myles cannot maintain a private right of action under the New York State Constitution because his due process, equal protection and free speech claims can be vindicated through the First and Fourteenth Amendment. *See Vilkhu v. City of New York*, No. 06-CV-2095 CPS JO, 2008 WL 1991099, at *8 (E.D.N.Y. May 5, 2008).

Myles is also unable to succeed on his equal protection claim to the extent the complaint can be interpreted as asserting a claim under the Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any persons within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L.Ed.2d 313 (1985). Accordingly, "[t]o state a claim for an equal protection violation, [a plaintiff] must allege that a government actor intentionally discriminated against [him or her] on the basis of race, national origin or gender."[4] *Hayden v. County of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). Here, Myles asserts that the

---

[3] For the sake of clarity, the Court notes that this determination applies to the plaintiff's due process claims brought under both the Fourteenth Amendment and the New York State Constitution.

[4] Although the Court need not address the claims against Jacobs, it warrants mention that Jacobs is a volunteer chairman of the NCDC. He was not a state actor.

defendants refused to include the names of a three-person slate of candidates nominated by the LBDC on the Democratic Nominating Petition because the nominees wouldn't support the Comprehensive Plan and iStar.  Compl. ¶ 26.  Indeed, Myles contends, in this regard, that when Jacobs learned that the LBDC intended to nominate Bernidino, Miccio and him, Jacobs became "highly concerned" that if they were elected, they would then constitute a majority of the City Council and that the City Council would oppose the construction projects were blocked.  *Id.* ¶ 18.  Myles further alleges that these luxury developments "[stood] to be a windfall" to Harris Beach who "would not be able to generate large legal fees" if the developments.  *Id*. ¶ 19.

Aside from these contentions, Myles has presented no evidence to suggest racial animus. In fact, of the three-person slate, Myles was the only minority candidate.  Despite several inferences in the complaint intended to lead the Court to construct some framework from which it could infer that the defendants harbored racial animus, the only "allegation of racial bias" is that Myles is African American.  There is simply nothing in the record to suggest that similarly situated potential candidates of another race were treated differently.  Arguably, the complaint establishes that the opposite is true.  Myles is alleged to have been treated the same way Bernidino and Miccio were treated.

Nor can Myles rely on the fact that the Comprehensive Plan and iStar may disparately impact the minority residents of North Park in support of his claim that he, himself, was discriminated against.  Even assuming that the facts in the complaint as true, Myles does not suggest that the defendants were motivated by their desire to implement a plan to harm the minority residents of North Park.  He specifically asserts that the defendants were motivated by the desire to help Harris Beach realize a financial gain.  As such, Myles equal protection claim is insufficient as a matter of law.

Similarly, Myles First Amendment claims lacks merit.  Myles appears to be asserting

that the defendants violated two different, albeit overlapping, rights, namely, his right to

participate in the political process and his right to assemble for the advancement of a political

belief.    Nonetheless, the basis of both of these claims is indistinguishable from his due process

and equal protection claims.    Myles contends that the reason he was not placed on the

nominating petition was because he had promised to fight against gentrification projects.    Pl.'s

Mem at 9.    Myles claims that in an attempt to quash his First Amendment rights, Jacobs sent

Daniel Lamparter, on behalf of the BOE, to the housing projects at Channel Park to intimidate

signors of Myles' designating petition so that they would not testify on his behalf in the state

court.    Completely disregarding the fact that he also acknowledges that he voluntarily withdrew

that petition because he was afraid that he would be indicted for fraud, Myles, nonetheless,

contends that the defendants actions could not have been based on anything other than

discriminatory intent.    *Id.*    The Court disagrees.    Read as a whole, the complaint makes clear

that the defendants' actions were driven by their desire to ensure that Harris Beach would be able

to generate legal fees from the Comprehensive Plan and iStar because Harris Beach was a major

donor to the Nassau County Democratic Party.    In other words, the complaint itself compels the

inference that the defendants would have gladly supported Myles had he not pledged to block the

development.    Thus, Myles has not substantiated his claims that the actions of the defendants

were motivated by racial bias.    Accordingly, Myles' First Amendment claim must also be

dismissed.

   c.    **Fifteenth Amendment and the Voting Rights Act**

   For the same reason, the Court finds that Myles has failed to state a claim under the

Fifteenth Amendment and § 2 of the Voting Rights Act.    'The Fifteenth Amendment provides

that:

     The right of citizens of the United States to vote shall not be denied or

abridged by the United States or by any State on account of race, color, or previous condition of servitude.

U.S. Const. amend. XV, § 1. "The Voting Rights Act was promulgated to ensure that the guarantees of the Fifteenth Amendment." *E. Flatbush Election Comm. v. Cuomo*, 643 F. Supp. 260, 263 (E.D.N.Y. 1986). It reflects a firm congressional intent to rid the country of racial discrimination in voting." *Id.* (citing *South Carolina v. Katzenbach*, 383 U.S. 301, 315, 86 S. Ct. 803, 812, 15 L.Ed.2d 769 (1966). For this reason, Section 2 prohibits the adoption of any election practice that "results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color." *Montano v. Suffolk Cty. Legislature*, 268 F. Supp. 2d 243, 261 (E.D.N.Y. 2003) (citing 42 U.S.C. § 1973(a)).

To support a claim on Fifteenth Amendment grounds, Myles must establish intentional discrimination on account of race, color, or previous condition of servitude. *McKnight v. Hayden*, 65 F. Supp. 2d 113, 122 (E.D.N.Y. 1999) (citing *Baker v. Pataki*, 85 F.3d 919, 926 (2d Cir.1996)). As previously stated, there is nothing in the complaint to suggest that Myles will be able to produce evidence of racial animus. The same holds true for his Voting Rights claim. Although Myles argues that the defendants have violated his right, "as a member of the language minority group," to participate in the political process, Myles does not allege the existence of majority that acted in concert to block the minority's preferred candidate for City Council. At best, his factual averments suggest that some sort of internal party issue—not racial bias— prevented him from enjoying an opportunity in engage in the political process. *See Reed v. Town of Babylon,* 914 F. Supp. 843, 874 (E.D.N.Y. 1996). Thus, the plaintiffs' Fifteenth Amendment and Voting Rights claims are also dismissed.

**d.    The Second Cause of Action – 42. U.S.C. § 1985**

In his second cause of action, Myles asserts that in an effort to keep him off the

19

ballot, the defendants conspired among themselves and with other individuals to deprive

him of his constitutional rights secured by the First, Thirteenth, Fourteenth and

Fifteenth Amendment to the United States Constitution, because of his race, ancestry

and/or ethnicity. *Id.* ¶ 43. 42 U.S.C. § 1985 "prohibits two or more persons from

conspiring for the purpose of depriving any person of the equal protection of the laws or

of equal privileges and immunities under the laws. 42 U.S.C. § 1985(3)." *Coggins v.

County of Nassau*, 07-CV-3624 JFB AKT, 2013 WL 6224631, at *9 (E.D.N.Y. Dec. 2,

2013). To adequately plead a claim under § 1985(3), a plaintiff must allege (1) a

conspiracy; (2) for the purpose of depriving a person or class of persons of the equal

protection of the laws, or the equal privileges and immunities under the laws; (3) an

overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or

property, or a deprivation of a right or privilege of a citizen of the *United States. See

Thomas v. Roach,* 165 F.3d 137, 146 (2d Cir. 1999).

In this matter, Myles has not sufficiently pleaded a conspiracy. Other than

asserting conclusory statements as to the existence of a conspiracy, Myles has not

pleaded any facts which suggest that the defendants actually entered into such an

agreement. *See Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995). "Moreover,

there can be no conspiracy to violate [a] plaintiff's constitutional rights," where, as here,

the plaintiff failed to assert facts that would give rise to a claim that his rights were

violated. *Id*. (citing *Roesch v. Otarola*, 980 F.2d 850, 854 (2d Cir.1992) ("where the

plaintiff could not maintain a cause of action under § 1983 against a state officer,

plaintiff's claims that non-state participants conspired with the state officer to deprive

him of his constitutional rights were properly dismissed."). Accordingly, the Court

dismisses Myles second cause of action alleging the existence of a section 1985

conspiracy.

### e. Municipal Liability

Finally, the County defendants correctly note that even if the complaint stated a viable due process, equal protection or other race-based claim, the complaint is devoid of any allegations that would support a cause of action against the BOE or the County of Nassau. A municipal body may not be held liable under Section 1983 for the unconstitutional acts of its employees absent allegations that such acts are attributable to a municipal custom, policy or practice. *See Monell v. Dep't of Social Servs. of the City of N.Y.*, 436 U.S. 658, 690-91 (1978). To establish the existence of a municipal policy or custom, a plaintiff must allege:

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Walker v. City of New York*, 63 F. Supp. 3d 301, 311 (E.D.N.Y. 2014) (citation and internal quotation marks omitted). In other words, "[u]nder *Monell*, a municipality may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees." *Curry v. City of Syracuse*, 316 F.3d 324, 330 (2d Cir. 2003). In this case, Myles has not alleged any link between the alleged actions of the individuals and a policy or custom in place in the County. Accordingly, for this reason as well, the complaint must be dismissed in its entirety.

### C. Rule 11

Jacobs has submitted an application for attorneys' fees and sanctions as against plaintiff's counsel for bringing what the defendants characterize as an entirely meritless case. Federal

Rule of Civil Procedure 11 requires that an attorney sign every pleading, written motion, and other paper filed with the courts. Fed. R. Civ. P. 11(a). In doing so, the attorney certifies that to the best of her knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, the filing

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

*Id.* 11(b). If an attorney violates Rule 11(b), the Court may impose sanctions. *Id.* 11(c).

Given the number of procedural irregularities in this case, the improper motion practice, and the severity of the allegations asserted against the defendants, which include, among other things, abuse of power, coercion and bribery, the Court has scheduled a conference to hear further argument on the application. The conference will be held on September 30, 2019, at 2:00 p.m. in held in Courtroom 814 in the United States Federal Courthouse in Central Islip.

Dated: Central Islip, New York
      September 17, 2019

**SO ORDERED:**

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge